UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DIEGO JULIO MAS TAMBRIZ (A No. 240 174 102),

Petitioner,

v.

WARDEN, MESA VERDE ICE DETETNION FACILITY,

Respondent.

No.  1:26-cv-3158 DJC CKD P

FINDINGS AND RECOMMENDATIONS

Petitioner, detained by the Immigration and Customs Enforcement Agency (ICE), has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  For the reasons which follow, the court recommends that the petition be denied.

I. Facts

Petitioner, a native and citizen of Guatemala, entered the United States without authorization at an unknown time and place.  ECF No. 8-2 at 1.

On August 1, 2024, petitioner pled guilty to attempted first-degree residential burglary. ECF No. 6-3 at 5.  A police report indicates petitioner attempted to open a locked side door of a

---

[1] This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

1

residence without any valid reason for doing so and while the residence was inhabited.  ECF No. 8-3 at 21.  He was sentenced to 2-years probation and 76 days in jail.  ECF No. 6-3 at 5.  On June 9, 2025, while still on probation, petitioner plead guilty to misdemeanor trespass and was ordered to serve 9 days in jail.  ECF No. 8-1 at 7.  On July 17, 2025, he was re-sentenced to one year in prison for attempted first degree residential burglary with 158 days credit for time already served.  ECF No. 8-3 at 5.   Petitioner was released from prison on October 29, 2025, (ECF No. 8-3 at 2) and taken into ICE custody (id. at 1).

On October 29, 2025, petitioner was charged with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) and ordered to appear for removal proceedings on November 10, 2025.  ECF No. 8-4 at 1.

Petitioner challenges his continued detention at the Mesa Verde ICE Detention Facility.  The status of petitioner's removal proceedings is not clear.

II.  Standard for Habeas Relief

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

III.  Mandatory Detention under 8 U.S.C. § 1226(c)

Respondent argues that petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(A).  Under that statute, ICE must take into custody any alien "who is inadmissible by reason of having committed any offense covered in [8 U.S.C. § 1182(a)(2)]."  An attempt at a crime of "moral turpitude" is a covered offense.  Id. at § 1182(a)(2)(A)(i)(I).  In Diaz-Flores v.

2

Garland, 993 F.3d 766 (9th Cir. 2021), the Ninth Circuit found that petitioner's commission of first-degree burglary as defined under Oregon law is a crime of "moral turpitude" to the extent it requires burglary within a dwelling:

> Because the statute requires the burglarized dwellings be regularly or intermittently occupied, a conviction will necessarily involve an intrusion onto the "justifiable expectation of privacy and personal security" that people have in the places where they retreat at night for lodging. Matter of J-G-D-F-, 27 I. & N. Dec. at 88. Appreciation for the sanctity of the home is both basic and widespread. As the Supreme Court has recognized, a victim's presence renders burglary particularly worthy of moral condemnation. See James v. United States, 550 U.S. 192, 203, 127 S. Ct. 1586, 167 L. Ed. 2d 532 (2007) ("The main risk of burglary arises not from the simple physical act of wrongfully entering onto another's property, but rather from the possibility of a face-to-face confrontation . . ."), overruled on other grounds by Johnson v. United States, 576 U.S. 591, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015). Oregon state courts have also noted that "[t]he reason that invading a 'dwelling' is made a more serious crime is to '[protect] against invasion of premises likely to terrorize occupants.'" State v. Davis, 281 Or. App. 855, 865, 385 P.3d 1245 (2016) (quoting State v. Ramey, 89 Or. App. 535, 538, 749 P.2d 1219 (1988)).

> Even if the burglar happens to break in when the victim is not home, the sanctity of the home has still been violated. "[A]n individual's expectation that her dwelling will remain private, secure, and free from intruders intending to commit a crime is violated regardless whether the dwelling is occupied at the time of the burglary." Uribe v. Sessions, 855 F.3d 622, 626–27 (4th Cir. 2017) (classifying an analogous Maryland burglary statute as a CIMT); see also California v. Ciraolo, 476 U.S. 207, 213, 106 S. Ct. 1809, 90 L. Ed. 2d 210 (1986) (recognizing concern for privacy is "most heightened" in a person's home, "both physically and psychologically").

Diaz-Flores, 993 F.3d at 772-73.

Here, petitioner pled guilty to attempted first degree residential burglary which is essentially burglary of an "inhabited dwelling." Cal. Penal Code § 460.[2]  There is one meaningful difference between first-degree burglary in Oregon and California.  While Oregon requires unlawful entry, such as by trespass, for there to be a burglary, Oregon v. McLaughlin,

---

[2]  The court notes that in the charges filed February 16, 2022, ECF No. 8-3 at 14, and in the abstract of judgment, ECF No. 8-3 at 5, reference is made to the California's regular burglary statute, Cal Penal Code § 459.  But petitioner was specifically charged with "first degree burglary," which is only defined in Cal Penal Code § 460 and is a subset of burglary defined in Cal Penal Code § 459.

317 Or. App. 596, 600-01 (2022), burglary can still happen in Calfonrnia if entry was made with consent of the dwelling's inhabitant, People v. Salemme, 2 Cal. App. 4th 775, 778-79 (3d Dist. 1992).  If a person enters an inhabited dwelling in California with consent and with the intent to commit a crime, which would have to be either larceny or a felony in California, Cal. Penal Code § 459, it would have to involve fraud [the use of deception or trickery, Husky Int. Electronics, Inc. v. Ritz, 578 U.S. 355, 360 (2016)] since the inhabitant-consent-giver's knowledge of the intent to commit larceny or a felony cannot be burglary.  Salemme, 2 Cal. App. 4th at 781.  The Supreme Court has held crimes "in which fraud was an ingredient have always been regarded as involving moral turpitude."  Jordan v. DeGeorge, 341 U.S. 223, 232 (1951).  In light of the Ninth Circuit's decision in Diaz-Flores, 993 F.3d at 772-73, and that any burglary in California committed with entry of the inhabited dwelling gained by consent is done with fraud, there is no instance in which the commission of burglary in California is not a crime of moral turpitude. Petitioner is therefore subject to mandatory detention by statute.

IV.  Prolonged Detention

Petitioner has now been in ICE custody for approximately 7 months.  Petitioner claims this violates his right to due process under the Fifth Amendment.  In Demore v. Kim, 538 U.S. 510 (2003), the Supreme Court upheld mandatory detention during the remainder of removal proceedings for persons convicted of crimes enumerated in 28 U.S.C. § 1226(c). In so doing, the Court recognized the strong public interest in decreasing criminal activity by aliens and completion of removal. Id. at 518.  The Court found:

> First, as Congress explained, "[a]liens who enter or remain in the United States in violation of our law are effectively taking immigration opportunities that might otherwise be extended to others." S.Rep. No. 104–249, p. 7 (1996). Second, deportable criminal aliens who remained in the United States often committed more crimes before being removed...

> Congress also had before it evidence that one of the major causes of the INS' failure to remove deportable criminal aliens was the agency's failure to detain those aliens during their deportation proceedings. See Department of Justice, Office of the Inspector General, Immigration and Naturalization Service, Deportation of Aliens After Final Orders Have Been Issued, Rep. No. I–96–03 (Mar.1996), App. 46 (hereinafter Inspection Report) ("Detention is

4

key to effective deportation"); see also H.R.Rep. No. 104–469, p. 123 (1995).

Id. at 518-19.

[Mandatory] detention necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed... Congress had before it evidence suggesting that permitting discretionary release of aliens pending their removal hearings would lead to large numbers of deportable criminal aliens skipping their hearings and remaining at large in the United States unlawfully.

Id. at 528. The petitioner in Demore had been detained approximately 6 months before being granted habeas relief by the district court; the Supreme Court reversed. Id. at 530-31. The ability of the executive to detain aliens pending removal, within limits, is undeniable. Zadvydas, 533 U.S. at 711 (KENNEDY, J., dissenting) ("Congress' power to detain aliens in connection with removal or exclusion ... is part of the Legislature's considerable authority over immigration matters").

Despite the Supreme Court's decision in Demore, the Ninth Circuit has held the Due Process Clause protects persons in the removal process from "arbitrary prolonged detention" Rodriguez v. Marin, 909 F.3d 252, 256 (9th Cir. 2018) suggesting that at some point even habeas petitioners subjected to mandatory detention under 8 U.S.C. § 1226(c) are entitled to release if they are not dangerous, nor pose a flight risk.

There has not been a showing that petitioner's detention amounts to arbitrarily prolonged detention. First, the period of detention at this point is only about 1 month longer than the period found Constitutionally acceptable in Demore. And, while the Court in Demore thought it important to note that at that time, the vast majority of most mandatory detentions under 8 U.S.C. § 1226(c) were shorter than 6 months, this was more to contrast such detention from the indefinite length of detention found problematic in Zadvydas. Demore, 538 U.S. at 529. Nothing in Demore reasonably suggests the Supreme Court was of the opinion that detention for 7 months under 8 U.S.C. § 1226(c) without a bond hearing reaches the point of being problematic with respect to process due under the Fifth Amendment.

/////

5

In any case, petitioner does not point to anything suggesting his detention has been arbitrarily prolonged.  Most importantly, he fails to point to anything suggesting ICE or DHS have inordinately delayed removal proceedings, that he ultimately will not be subjected to removal, and that he is not free to leave detention by agreeing to return to Guatemala. Petitioner's confinement appears to coincide with proceedings authorized by statute (in other words, the premise that confinement accompanies the determination as to whether petitioner will be admitted does not appear to be pretextual), see Soberanes v. Comfort, 388 F.3d 1305, (10th Cir. 2004) (fact that detention was "directly associated with a judicial review process that has a definite and evidently impending termination point" rendered detention allowable under Denmore, 538 U.S. 527-529).

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  The petition for writ of habeas corpus (ECF No. 1) be DENIED; and

2.  This case be CLOSED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within 14 days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  June 5, 2026

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
tamb3158.imm.frs

6